UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――

№ 13-cv-1138 (JFB)(WDW)

―――――――――――――――

STAR MULTI CARE SERVICES, INC.,

Plaintiff,

VERSUS

EMPIRE BLUE CROSS BLUE SHIELD, ET AL.,

Defendants.

―――――――――――――――

**MEMORANDUM AND ORDER**
March 19, 2014

―――――――――――――――

JOSEPH F. BIANCO, District Judge:

Plaintiff Star Multi Care Services, Inc. ("plaintiff" or "Star") initiated this action in the Supreme Court of the State of New York, County of Suffolk, on February 12, 2013. The state-court complaint alleges that defendant Empire Blue Cross Blue Shield ("defendant" or "Empire") breached a contract to pay for home health care services provided by Star to defendant Demetria Sarris ("Ms. Sarris"). Empire was served with the complaint on February 12, 2013, and removed this action to federal court on March 4, 2013. It appears that the parties dispute whether Ms. Sarris and her agent, Van Sarris ("the Sarrises" or "the Sarris defendants") had been served on that date, but in any event, they did not affirmatively consent to Empire's removal. Plaintiff has filed a motion to remand, and in response, Empire has opposed remand and filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting several bases for dismissal.

For the reasons set forth below, plaintiff's motion to remand is denied, and Empire's motion to dismiss is granted. As a threshold matter, in connection with the motion to remand, plaintiff argues that Empire's notice of removal is defective because the other defendants did not consent to removal and, thus, the rule of unanimity has been violated. The Court disagrees. It is well settled that one of the exceptions to the unanimity rule is where the non-joining defendants had not been served at the time the action was removed and, here, it is conceded that service on the Sarris defendants had not been completed at the time Empire had filed its notice of removal on March 4, 2013. To the extent plaintiff argues that, after removal and after the Sarris defendants were served, defendants still had an affirmative obligation to obtain their consent to removal, there is no support

in the removal statute or case authority for that position. Instead, the statute places the burden on the later-served defendants to make a motion to remand within 30 days of service if they do not consent. *See* 28 U.S.C. §§ 1447(c), 1448. Here, because the later-served defendants chose not to make such a remand motion, plaintiff's motion for remand on this ground is without merit.

In addition, plaintiff argues that remand is warranted because its claim does not arise under ERISA and, thus, the Court lacks subject matter jurisdiction. However, as discussed in detail below, the Court concludes that Star's claim is pre-empted by ERISA and that the motion to remand for lack of subject matter jurisdiction is denied. In particular, it is conceded that: (1) Ms. Sarris is a participant in the ERISA Plan at issue; (2) Star submitted claims for benefits under the Plan in its capacity as Ms. Sarris's assignee; (3) the claims were denied on grounds of medical necessity; and (4) Star is not in Empire's network of providers, nor does it have any other formal contract with Empire for the provision of services to Ms. Sarris. Thus, it is clear that the claim asserted by Star raises a colorable claim for benefits under an ERISA plan and does not give rise to an independent duty between Star and Empire. Although Star argues that Empire did have an independent duty, Star was required to seek authorization from Empire before providing services by the terms of the Plan. In fact, plaintiff's own complaint uses the term "authorization" to describe what it received from Empire (Compl. ¶ 13), and thus it is clear that the alleged authorization was pursuant to the Plan and not an independent duty. At oral argument, plaintiff's counsel asserted that a claim, which is based upon an alleged oral confirmation by Empire that the services for Ms. Sarris would be covered by the Plan, gives rise to an independent duty that does not implicate the ERISA plan. However, that exact argument was expressly rejected by the Second Circuit in *Montefiore Med. Ctr. v. Teamsters Local* 272, 642 F.3d 321 (2d Cir. 2011), where the Second Circuit held that ERISA preempted a state law claim for payment based upon a verbal verification that the anticipated services on a patient were covered. Thus, plaintiff's claim is clearly preempted by ERISA and subject matter jurisdiction exists in federal court. Accordingly, plaintiff's motion to remand on this ground is denied.

Finally, given the application of ERISA, it is clear that an ERISA claim cannot proceed against Empire, as an insurer, because an ERISA claim under Section 502(a)(1)(B) can only be asserted against the plan itself, the plan administrator, and the plan trustees. In fact, plaintiff concedes this point. *See* Pl. Opp. Mem. At 18 ("Star agrees with Empire's opening statement to its final argument for dismissal that 'Plaintiff's ERISA benefit claim cannot proceed forward against Blue Cross.'"). Moreover, plaintiff does not dispute Empire's alternative argument that plaintiff has failed to exhaust the administrative remedies under ERISA. Accordingly, the motion to dismiss is granted as to Empire, and the case is remanded to state court with respect to the remaining state law claims against the Sarris defendants.

I. BACKGROUND

A. Factual Background

According to the complaint, plaintiff provided home healthcare services to Ms. Sarris from March 14, 2012, to November 1, 2012, the value of which exceeds $70,000.00. (Compl. ¶¶ 8, 11.) Plaintiff contends that Empire is liable for the value of these services because, as Ms. Sarris's health insurer, it "provided authorization" to

2

plaintiff before plaintiff performed the services. (*Id.* ¶ 13.) Although the complaint does not state the basis for Empire's authority, other than to allege that Empire was Ms. Sarris's health insurer, it appears that, during the relevant time period, Empire was the insurer for the "Verizon Medical Expense Plan for New York and New England" ("the Plan"). (Oluwasanmi Decl. ¶ 4.) The Plan is a health and welfare benefit plan under ERISA, and Ms. Sarris was a Plan participant. *Id.*

### B. Procedural History

Plaintiff filed its breach-of-contract complaint in the Supreme Court of the State of New York, County of Suffolk, on February 12, 2013, and served Empire the same day. Plaintiff states that it initiated "nail and mail" service on the Sarris defendants, under N.Y. C.P.L.R. § 308(4), on February 20 and 22, 2013. Under that section, service is not complete until ten days after the serving party files proof of service with the clerk of the court. Plaintiff filed an affidavit of service with the Suffolk County Clerk on February 25, 2013.

On March 4, 2013, Empire filed its Notice of Removal, contending that the complaint raised federal questions under ERISA. At that time, the Sarris defendants had not consented to the removal, and there is no indication in the parties' motion papers that they have ever consented, although they have not moved to remand this action to state court. *See* 28 U.S.C. § 1448 ("This section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case.").

On March 7, 2013, service of the state-court complaint was complete on the Sarrises under N.Y. C.P.L.R. § 308(4), because ten days had passed since the filing of proof of service with the clerk of the court.

On March 27, 2013, plaintiff moved to remand this action to state court, and supplemented its motion on April 26, 2013. On May 6, 2013, Empire opposed plaintiff's remand motion, and moved to dismiss the complaint. On June 6, 2013, plaintiff opposed the motion to dismiss and filed a reply supporting its remand motion. On June 20, 2013, Empire replied in support of its motion to dismiss. The Court heard oral argument on both motions on July 2, 2013. Counsel for the Sarrises appeared at oral argument, but the Sarrises have not otherwise participated in the litigation of these motions.

## II. LEGAL STANDARDS

The Court first discusses the legal standards governing the motions to remand and dismiss.

### A. Motion to Remand

Generally, a case may be removed from state court to federal court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)); *see also* 28 U.S.C. § 1441. If a federal district court determines that it lacks subject matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'"[1] *In re*

---

[1] Competent proof of federal jurisdiction in an ERISA case includes "the various plan documents." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211

3

*Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), M 21-88, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979)). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)); *accord Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006).

Furthermore, in cases with multiple defendants, the "rule of unanimity" requires that "'all named defendants over whom the state court acquired jurisdiction must join in the removal petition for removal to be proper.'" *Sleight v. Ford Motor Co.*, No. 10 Civ. 3629 (BMC), 2010 WL 3528533, at *1 (E.D.N.Y. Sept. 3, 2010) (quoting *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 437 (S.D.N.Y. 2006) (additional citations omitted)); *see also Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007) ("There is general agreement among the courts that all the defendants must join in seeking removal from state court." (internal quotation marks and alterations omitted)). "Although there is no statutory requirement that all defendants either must join the petition for removal or consent to removal, courts have consistently interpreted 28 U.S.C. § 1446 as requiring that all defendants consent to removal within the statutory thirty-day period." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 383 (S.D.N.Y. 2006) (collecting cases). Courts may excuse the failure to join all defendants in the removal petition or to otherwise obtain their consent for removal where the non-consenting defendants "have not been served, [are] unknown defendants, [or have been] fraudulently joined." *Sherman*, 528 F. Supp. 2d at 330.

B. Motion to Dismiss

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure probe the legal, not the factual, sufficiency of a complaint. *See, e.g.*, *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). Stated differently, when assessing the viability of a complaint's pleadings at the Rule 12(b)(6) stage, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (internal alternation omitted). Thus, when reviewing a motion to dismiss, "the [c]ourt must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Volpe v. Nassau County*, 12-CV-2416 (JFB)(AKT), 2013 WL 28561, at *5 (E.D.N.Y. Jan. 3, 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith*

---

(2004). Therefore, the Court may consider the "Verizon Medical Expense Plan for New York and New England Associates" submitted by Empire. (Ex. B. to Oluwasanmi Decl.) In addition, the Court may consider the claim forms. (Ex. C to Oluwasanmi Decl.); *see Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 329 (2d Cir. 2011) (reviewing claim forms in the context of a remand motion).

*Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Generally, this standard for survival does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Where a motion to dismiss presents itself before the court, a court may examine the following: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)) (internal citations omitted).[2]

### III. DISCUSSION

#### A. Rule of Unanimity

As a threshold matter, plaintiff argues that this case should be remanded because the rule of unanimity is not satisfied, since the Sarris defendants did not consent to removal, either before Empire removed this case or within 30 days after. The Court concludes, however, that Empire was not required to obtain the Sarrises' consent before removal because, at that time, service was not complete upon the Sarrises in the state-court action. *See* 28 U.S.C. § 1446(b)(2)(A) ("[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action."); *see also Ortiz v. City of New York*, No. 13 Civ. 136(JMF), 2013 WL 2413724, at *4 (S.D.N.Y. June 4, 2013) ("[T]he rule of unanimity . . . requires the consent only of defendants who have been properly joined and served.") (internal citation and quotation marks omitted). To determine whether the Sarrises had been served by the date of Empire's removal, this Court must look to New York state law. *See Fed. Ins. Co. v. Tyco Int'l, Ltd.*, 422 F. Supp. 2d 357, 384 (S.D.N.Y. 2006).

Here, the state-law rule is N.Y. C.P.L.R. § 308(4), which states that, when parties must resort to so-called "nail and mail" service, as plaintiff did here, service is complete ten days after the serving party files proof of service with the clerk of the court. According to the facts provided in plaintiff's own memorandum, service was not complete on the Sarrises under New York law until March 7, 2013, three days after Empire's removal of this case on March 4, 2013. (Pl. Mem. at 2.) Therefore, Empire was not required to obtain the Sarrises' consent before removal.

To the extent plaintiff argues that Empire was required to obtain the Sarrises' consent after removal, once they had been served, the Court disagrees. There is nothing in the removal statute itself, or in the case authority interpreting the removal statute, that requires the removing defendant to obtain, after removal, the consent of defendants who had not been served at the

---

[2] As is discussed in more detail *infra*, plaintiff's claim is based upon an ERISA plan. Therefore, the plan documents submitted by Empire are integral to plaintiff's complaint. *See DeSilva v. North Shore-Long Island Jewish Health Sys. Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011).

time of removal. In fact, the removal statute itself address this issue by allowing defendants who were first served after the case had already been removed to make a motion to remand within 30 days of effective date of service if they do not wish to have the action remain in federal court. *See* 28 U.S.C. §§ 1447(c), 1448. Here, the Sarrises made no such motion. Thus, the Court rejects plaintiff's argument that the failure to obtain the consent of defendants whose service became complete after removal renders the removal defective under the unanimity rule.

Other courts have reached the same conclusion under similar circumstances. For example, in *Lewis v. Rego Co.*, 757 F.2d 66 (3d Cir. 1985), the Third Circuit rejected the precise argument made by plaintiff here:

> As noted above, although Bastian had not been served at the time the removal petition was filed, Bastian was served within the 30-day period after service on the other three defendants. Appellants contend that in such circumstances if Bastian did not join in the petition before the expiration of the 30-day period, the action should have been remanded. Any other rule, appellants argue, would encourage a race to the courthouse, enabling the defendants first served in a case to determine whether it would be removed.
>
> Appellants cite no authority for the rule they espouse, and we agree with the district court that the removal statute contemplates that once a case has been properly removed the subsequent service of additional defendants who do not specifically consent to removal does not require or permit remand on a plaintiff's motion. The statute itself contemplates that after removal process or service may be completed on defendants who had not been served in the state proceeding. The right which the statute gives to such a defendant to move to remand the case confers no rights upon a plaintiff. 28 U.S.C. § 1448.

*Id.* at 69 (footnote omitted); *see also Schmude v. Sheahan*, 198 F .Supp. 2d 964, 967 (N.D. Ill. 2002) ("Here, the Sheriff was the only defendant that had been served at the time of removal, so the absence of [the Deputy Sheriff's] consent is of no moment. In short, there was no defect with the Sheriff's removal."); *accord Alexander v. County of Onondaga*, No. 5:08-CV-748, 2009 WL 1322311, at *3 (N.D.N.Y. May 12, 2009).[3]

### B. ERISA Preemption

The motions to remand and dismiss both depend on the question of ERISA preemption, of which there are "two parallel and independent" forms. *Wurtz v. Rawlings Co., LLC*, 933 F. Supp. 2d 480, 489 (E.D.N.Y. 2013). Complete preemption applies where Congress has so "completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Bloomfield v. MacShane*, 522 F. Supp. 2d 616, 620 (S.D.N.Y. 2007) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)) (internal quotation marks omitted). In contrast, express preemption applies where a federal law "contains an express preemption clause," requiring the court to

---

[3] The cases plaintiff cites concerning the rule of unanimity all involve parties who were served before removal. When asked at oral argument to cite any case where parties served after removal were required to consent within a certain time period, counsel for plaintiff was unable to name such a case.

"'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)). As set forth *infra*, the Court concludes that plaintiffs' claim is preempted on both grounds. Therefore, the motion to remand is denied, and because the preempted claim could not proceed even if it was re-styled as an ERISA claim, the motion to dismiss is granted.

1. Complete Preemption

ERISA was enacted to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (alteration in original). Its main objective "is to provide a uniform regulatory regime over employee benefit plans." *Id.*; *see also N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995) ("Congress intended 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'" (alterations in original) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990))).

To provide such uniformity, the statute contains broad preemption provisions, which safeguard the exclusive federal domain of employee benefit plan regulation. *See Davila*, 542 U.S. at 208; *see also Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). One such source of preemption under ERISA is § 502(a)(1)(B), which serves as ERISA's main enforcement tool in ensuring a uniform federal scheme:

> A civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

The Supreme Court has explained that "the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). "[T]he inclusion of certain remedies and the exclusion of others under [§ 502's] federal scheme . . . 'provide[s] strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). Likewise, the Supreme Court has acknowledged that "the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.*

For this reason, where a plaintiff brings a state law claim that is "within the scope" of ERISA § 502(a)(1)(B), ERISA's preemption power will take effect. *See Davila*, 542 U.S. at 209. The effect of this preemptive power cannot be understated: it "prevents plaintiffs from 'avoid[ing] removal' to federal court 'by declining to plead necessary federal questions.'" *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 298-99 (2d Cir. 2012) (quoting *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010)) (alteration in original).

The test for assessing whether a claim is "within the scope of" ERISA § 502(a)(1)(B), and therefore completely preempted, consists of two parts:

> claims are completely preempted by ERISA if they are (i) brought by "an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (ii) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions."

*Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) (quoting *Davila*, 542 U.S. at 210); *see also Davila*, 542 U.S. at 210 ("[I]f an individual . . . could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."); *Metro. Life*, 481 U.S. at 65-66 (noting that section 502(a)(1)(B) of ERISA contains "extraordinary pre-emptive power" that "converts an ordinary state common law complaint into one stating a federal claim," making "causes of action within the scope of . . . § 502(a) . . . removable to federal court").

Additionally, "[t]o avoid potential confusion under the first prong of *Davila*, [the Second Circuit] has further clarified that the plaintiff must show that: (a) he is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Arditi*, 676 F.3d at 299. Where both of *Davila*'s factors are satisfied—including the two sub-parts to *Davila*'s first prong—ERISA will preempt the state law claim. *Id.* (citing cases).

i. *Davila* Prong One

The Court first addresses whether Star is "the *type* of party that can bring a claim" under § 502(a)(1)(B); it then considers "whether the *actual claim*" at issue constitutes a "colorable claim" for benefits under § 502(a)(1)(B). *Montefiore*, 642 F.3d at 328 (emphasis in original); *see also Josephson v. United Healthcare Corp.*, No. 11–CV–3665(JS)(ETB), 2012 WL 4511365, at *3 (E.D.N.Y. Sept. 28, 2012) (acknowledging the Second Circuit's interpretation of *Davila*'s two-pronged test as consisting of two inquiries under the first prong).

a. Type of Party

As previously set forth, § 502(a)(1)(B) clearly provides that a civil action may be brought (1) "by a participant or beneficiary" of (2) an ERISA employee benefit plan. 29 U.S.C. § 1132(a)(1)(B). It is not disputed that the Plan is an employee welfare benefit plan under ERISA. *See* 29 U.S.C. § 1002(1).[4] Although plaintiff is not a direct

---
[4] Section 3(1) of ERISA defines an employee welfare benefit plan as "any plan, fund, or program which

8

participant in or beneficiary of the plan, "[a] healthcare provider may stand in place of the beneficiary to pursue an ERISA claim if the beneficiary has assigned his or her rights to the provider in exchange for medical care." *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11 Civ. 8517, 2012 WL 4840807, at *3 (S.D.N.Y. Sept. 24, 2012). Plaintiff has stated, by checking "Y" on a claim form, that Ms. Sarris assigned it her rights in exchange for care (Oluwasanmi Decl. ¶ 7; Ex. C), and accordingly, plaintiff is the type of party who could bring an ERISA claim. *Cf. Montefiore*, 642 F.3d at 329 ("Here, each of the reimbursement forms that provide the basis for Montefiore's suit contain a "Y" for "yes" in the space certifying that the patient has assigned his claim to the hospital. Accordingly, . . . the first step of the first prong of the *Davila* test is satisfied.") Empire has therefore satisfied *Montefiore*'s first prong.

b. Colorable claim

The parties' primary dispute is whether plaintiff's state breach of contract claim is a "colorable claim" under ERISA, *i.e.,* a claim "to recover benefits due" under the terms of the Plan. 29 U.S.C. § 1132(a)(1)(B). Empire argues that plaintiff's claim is "colorable" because the Plan's benefits are the source of payment to which plaintiff believes it is entitled. Plaintiff responds that it seeks damages for breach of contract, not a denial of benefits.[5] On careful consideration of the parties' positions, the Court agrees with Empire that Plan benefits are at the heart of plaintiff's complaint, making it a "colorable" claim under ERISA.

Plaintiff's contention that his state claim is one for damages, not benefits, is unpersuasive. The Second Circuit has noted a distinction between claims concerning a "*right* to payment" and claims involving an "*amount* of payment." *See Montefiore*, 642 F.3d at 331 (emphasis added). While right-to-payment claims "implicate[s] coverage and benefits established by the terms of the ERISA benefit plan," which may be brought under § 502(a)(1)(B), amount-of-payment claims are "typically construed as independent contractual obligations between the provider and . . . the benefit plan." *Id.*

Here, accepting the allegations in plaintiff's complaint as true, and in a light most favorable to plaintiff, the complaint still does not allege facts to support an independent contractual obligation, but instead states that Empire "provided authorization" for plaintiff's services. (Compl. ¶ 13.) An "authorization" plainly implicates coverage and benefits determinations, and places plaintiff's complaint squarely within the "right to payment" category. *See Neuroaxis*, 2012 WL 4840807, at *3-4 (S.D.N.Y. Oct. 4, 2012) (noting that only "right to payment" claims "are considered actual claims for benefits and can be preempted"; further clarifying that "'[r]ight to payment' claims involve challenges to benefits

---

was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits." 29 U.S.C. § 1002(1).

[5] Plaintiff also argues that its claim cannot be colorable because it has sued Empire, who (as is discussed *infra*) would not be a proper defendant if plaintiff's claim were brought under ERISA.

However, it is clear that the identity of the named defendant is not the touchstone of colorability under ERISA—the question is whether the claim itself "implicate[s] coverage and benefits established by the terms of the ERISA benefit plan." *Monetfiore*, 642 F.3d at 331. It is possible for a claim to implicate coverage and benefits even when the plaintiff has sued the wrong defendant. *See, e.g.*, *Wurtz*, 933 F. Supp. 2d at 509.

determinations, depend on the interpretation of plan language, and often become an issue when benefits have been denied," whereas "'[a]mount of payment' claims involve the calculation and execution of reimbursement payments, depend on the extrinsic sources used for the calculation, and are commonly tied to the rate schedules and arrangements included in provider agreements"); *Josephson*, 2012 WL 4511365, at *3 (noting distinction between claims for plan benefits that turn on a "right to payment" as opposed to an "amount of payment," and concluding that because some of the reimbursement claims at issue "were denied for reasons that would implicate coverage determinations under the terms of the United benefit plans," federal subject matter jurisdiction applied).

Although the Court need not (and does not) do so at this stage in the litigation, consideration of the merits of plaintiff's claim would require the Court to review the terms of the Plan, particularly the provision concerning home health care and the requirement that it be "precertified." (Ex. B to Oluwasanmi Decl. at 44.) This weighs in favor of a finding that plaintiff's breach of contract claim is in fact a colorable ERISA claim. *See Olchovy v. Michelin N. Am., Inc.*, No. 11-CV-1733(ADS)(ETB), 2011 WL 4916891, at *4 (E.D.N.Y. Sept. 30, 2011) (Report and Recommendation) (stating *Montefiore* "teaches that a dispute is a colorable claim for benefits under ERISA when its resolution depends on an interpretation of the terms of an ERISA-governed employee benefit plan; that is, when, in order to determine whether the plaintiff is entitled to relief, the court must look to the terms of the employee benefit plan, itself").

The allegation that Empire "provided authorization"—an apparent reference to Plan coverage—stands in contrast to those cases in which a court has held that the plaintiff's claim was better categorized as an "amount of payment" dispute related to an independent contractual obligation. *See, e.g.*, *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 943-44 (9th Cir. 2009) (holding that action against an ERISA plan administrator based on his alleged oral promise to pay for the majority of beneficiary's medical expenses was not a "colorable claim" under § 502(a)(1)(B) because dispute concerned the terms of the alleged oral promise, not of the ERISA plan itself); *Olchovy*, 2011 WL 4916891, at *5 (where plaintiffs alleged they were entitled to family medical coverage pursuant to a settlement agreement with defendants' predecessor, this did not constitute a "colorable claim" under ERISA because, "notwithstanding what the Plan states, they are entitled to . . . coverage . . . pursuant to a separate court-ordered settlement"); *cf.* *Zummo v. Zummo*, No. 11 CV 6256(DRH)(WDW), 2012 WL 3113813, at *4 (E.D.N.Y. July 31, 2012) (because plaintiff's breach-of-contract claim required an examination of an employee benefit plan's language and essentially sought enforcement of a right to payment under the terms of that plan, plaintiff's "claim [fell] squarely within the enforcement provision of ERISA"). As in *Montefiore*, this case does not concern "underpayment or untimely payment, where the basic right to payment has already been established and the remaining dispute only involves obligations derived from a source other than the Plan." 642 F.3d at 331. The basic right to payment remains unestablished in this case, precisely because of a dispute about Plan coverage.

The Court, therefore, concludes that plaintiff's claim is not an "amount of payment" dispute, but instead relates to the "right to payment" under the Plan. Empire

has met both facets of the first prong of the *Davila* test.

### ii. *Davila* Prong Two

The question to be resolved under the second prong of *Davila* is whether any other independent legal duty is implicated by Empire's alleged representation to plaintiff that "provided authorization" for Sarris's home health care. The Second Circuit has made clear that the "key words" in conducting this analysis are "other" and "independent." *See Montefiore,* 642 F.3d at 332 (internal quotation marks omitted).

As discussed above, plaintiff contends that Empire's representations created an "independent," or "other" contract under which Empire is obligated to pay plaintiff for Sarris's care, regardless of whether the Plan covers that care. In other words, plaintiff's theory is that Empire should be bound by its representation of coverage, even if, viewing the allegations in the complaint in a light most favorable to plaintiff, that representation was incorrect or misleading.

Although some courts have concluded that allegations of misrepresentations of coverage are distinct from ERISA claims and should not be preempted, *see Vencor Hosps.-Ltd. Partnership v. Aetna U.S. Healthcare, Inc.*, No. IP00-0695-CB/S, 2001 WL 1029109, at *2 (S.D. Ind. Sept. 6, 2001) (collecting cases), the Second Circuit in *Montefiore* addressed a nearly identical allegation.[6] As the Second Circuit stated, the case for ERISA preemption is particularly strong when the process of seeking approval before the provision of services is itself required by the ERISA plan, such that the conversation in which a misrepresentation is alleged to have occurred only took place because of a plan term:

> Specifically, Montefiore argues that prior to providing services to each beneficiary, it would call the Fund and verify that the patient was eligible and that the anticipated services were covered. These verbal communications, Montefiore contends, gave rise to an independent legal duty between Montefiore and the Fund.
>
> We are not persuaded. Whatever legal significance these phone conversations may have had, *see* Appendix A, they did not create a sufficiently *independent* duty under *Davila*—indeed, as Montefiore concedes, this pre-approval process was *expressly required by the terms of the Plan itself* and is therefore inextricably intertwined with the interpretation of Plan coverage and benefits.

642 F.3d at 332 (emphasis in original).

Here, as in *Montefiore*, plaintiff has sued based on representations allegedly made by Empire when plaintiff sought pre-approval for its services, and those calls were "expressly required by the terms of the Plan itself." *Id.*; (Ex. B to Oluwasanmi Decl. at 44.) Indeed, the allegations in the complaint describe an "authorization" from Empire to

---

[6] To be clear, the complaint does not explicitly allege that Empire misrepresented coverage, only that it "provided authorization[s]," on which plaintiff relied. Nonetheless, construing the complaint in a light most favorable to plaintiff, the Court has considered whether a misrepresentation claim would allow plaintiff to avoid ERISA preemption, and concludes that it does not, following the Second Circuit's decision in *Montefiore*.

Star.[7] (Compl. ¶ 13.) Therefore, like the Second Circuit in *Montefiore*, this Court concludes that Empire's alleged representations were "inextricably intertwined with the interpretation of Plan coverage and benefits," *id.*, and that the complaint presents a colorable ERISA claim. To hold otherwise would allow every conversation or verification with the insurer or the plan administrator regarding the Plan and terms of the Plan to be treated as creating an independent duty to pay that removes such dispute from the scope of ERISA. Such a result is completely inconsistent with the broad preemption provisions of ERISA which are designed to safeguard the exclusive domain of employee benefit plan regulation.

Plaintiff has not expressly distinguished the facts of *Montefiore*, even after the Court asked plaintiff's counsel to do so at oral argument.[8] For example, plaintiff has not alleged in the complaint or elsewhere that Star had a separate contract with Empire that could plausibly give rise to any legal claim outside of the Plan. In fact, it appears that the opposite is true, and that plaintiff was an out-of-network provider. (Oluwasanmi Decl. ¶ 5.) As a result, plaintiff's citations to both *Thrift Drug Store, Inc. v. Univ. Prescription Admins.*, 131 F.3d 95, 96-98 (2d Cir. 1997) and *Knickerbocker Dialysis v. Trueblue, Inc.*, 582 F. Supp. 2d 364, 367 (E.D.N.Y. 2008), are inapposite. In those cases, the plaintiff was not assigned a plan participant's rights, as plaintiff here was, but instead was a party to a long-term, independent contract negotiated with a plan administrator.

Here, as discussed above, the most that plaintiff has alleged, viewed in a light most favorable to it, is reliance on a promise (the "authorization"), but the promise was based on an interpretation of Plan benefits. Therefore, plaintiff's reliance on *Stevenson v. Bank of N.Y., Inc.*, 609 F.3d 56, 60 (2d Cir. 2010) is also misplaced. As the Second Circuit has since noted:

> In *Stevenson*, an agreement separate and independent from the pension plan governed the plaintiff's benefits because the plaintiff was no longer in the bank's employ and was no longer a participant in the bank's plan. . . . Whatever rights the plaintiff had arose not from the bank's plan, but from the independent agreement that gave him benefits even though he had no right to them under the plan.

---

[7] The Court notes that, in its opposition papers to the motion to dismiss, plaintiff submitted a declaration from one of its employees which attempts to describe the authorization in more detail. The declaration recounts a telephone call with an unidentified representative of Empire and asserts that, "[d]uring said telephone conversation, the representative of Empire confirmed what had been asserted by Ms. Sarris and stated that Star would be paid through Ms. Sarris's healthcare plan." (Decl. of Debra Kelly, dated June 5, 2013, at ¶ 13.) Although the Court cannot consider that declaration in connection with a motion to dismiss, it confirms what is clear from the allegations in plaintiff's complaint and the Plan documents—namely, that the claim here is not based upon any independent duty, but rather is inextricably intertwined with the Plan and the terms of the Plan.

[8] To the extent plaintiff's counsel attempted to distinguish *Montefiore* at oral argument by arguing that the alleged oral verification there was by a representative of the fund (rather than the insurer), the Court finds that argument unpersuasive. The Second Circuit's preemption analysis in *Montefiore* was not contingent upon the party making the verification, but rather was based on the fact that such alleged verification was inextricably intertwined with the interpretation of coverage under the plan.

That inextricable bond with the Plan terms exists regardless of whether the verification is by the insurer or the Fund itself.

*Arditi*, 676 F.3d at 300. The Second Circuit in *Arditi* held that a similarly independent agreement did not exist when the alleged contract simply "described the benefits Arditi would receive as a Plan member." *Id.* Here, the alleged "authorization" likewise describes the benefits Sarris would have received as a Plan member, and created no new benefits or obligations. Thus, *Stevenson* does not apply, and the Court must follow *Arditi* and *Montefiore*.

Considering plaintiff's arguments on a broader scale, a finding that plaintiff's claims were not preempted by ERISA here would have problematic implications for future cases, and undermine the purposes of ERISA. As previously discussed, Congress enacted ERISA to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Davila,* 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)). Congress's goal of establishing a "uniform regulatory regime over employee benefit plans" and "to ensure that employee benefit plan regulation is exclusively a federal concern," *id.* (citation and internal quotation marks omitted), would be considerably weakened if all a party need do to avoid such preemption were to characterize a statement about benefits coverage as a separate contractual promise.

For the foregoing reasons, the Court concludes that Empire has carried its burden to justify removal, because plaintiff's state breach-of-contract claim is "within the scope of" ERISA § 502(a)(1)(B), and completely preempted. On that basis alone, removal was proper and the motion to remand is denied.

2. Express Preemption

In addition to being completely preempted, Empire also argues that plaintiff's state breach-of-contract claim is expressly preempted by ERISA, and the Court agrees.

ERISA's preemption clause provides that "the provisions of [ERISA] shall supersede any and all State laws insofar as they now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). It is not disputed that the Plan in this case is an "employee benefit plan," and thus the question is whether plaintiff's claim is based on a state law relating to it.

"A claim under state law relates to an employee benefit plan if that law 'has a connection with or reference to such a plan.'" *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.*, 50 F.3d 144, 148 (2d Cir. 1995) (quoting *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985)); *see also Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (same). A state law also may "relate to" a benefit plan, "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). Thus, ERISA "preempts all state laws that *relate* to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA." *Howard v. Gleason Corp.*, 901 F.2d 1154, 1156 (2d Cir. 1990) (alteration, citation, and internal quotation marks omitted).

Although plaintiff's state claim is based on a common law theory, such claims may still be expressly preempted if they relate to an employee benefit plan. *See Pilot Life*, 481 U.S. at 47-48. The Supreme Court has given the phrase "relate to" a broad

13

meaning, such that a state-law claim is related to an employee benefit plan "if it has a connection with or reference to such a plan." *Id.* at 47 (internal quotation marks and citation omitted). In *Pilot Life*, the state common law claims were for "Tortious Breach of Contract," "Breach of Fiduciary Duties," and "Fraud in the Inducement," but the case arose from an insurer's denial of benefits, and the Court held that these claims were expressly preempted by ERISA. *Id.* at 43, 48. The same result holds true here, because plaintiff's state breach-of-contract claim not only "has a connection with or reference to" the Plan, *id.* at 47—it is entirely based on the denial of benefits under the Plan.

Plaintiff has not distinguished *Pilot Life* or explained how his claim could meet the exception to preemption in ERISA's "savings clause," which states that "nothing in [ERISA] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). The Court considered in *Pilot Life* whether the state common law "bad faith" claim regulated insurance, and held that it did not, based on a common-sense understanding of the phrase "regulates insurance" and on the broad reach of ERISA. *Pilot Life*, 481 U.S. at 56; *see also Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 334 (2003) ("It is well established in our case law that a state law must be "specifically directed toward" the insurance industry in order to fall under ERISA's saving clause; laws of general application that have some bearing on insurers do not qualify.") (citations omitted). For the same reasons, plaintiff's state breach-of-contract claim is not saved, and it is expressly preempted by ERISA.

C. Motion to Dismiss

Empire's motion to dismiss is granted because, even if plaintiff's preempted state breach-of-contract claim was restyled as an ERISA claim, it could not proceed under § 502(a)(1)(B) for two independent reasons.[9]

First, plaintiff's claim must be dismissed because the complaint does not allege that Empire is a proper defendant. The Second Circuit has held that a claim for benefits pursuant to ERISA § 502(a)(1)(B) may only be asserted against the plan itself, the plan administrator, and the plan trustees. *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) ("[O]nly the plan and the administrators and trustees of the plan in their capacity as such may be held liable." (quoting *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989)) (internal quotation marks omitted)); *see also Chapman v. Choicecare Long Island Disability Plan*, 288 F.3d 506, 509-10 (2d Cir. 2002); *Chapro v. SSR Realty Advisors, Inc. Severance Plan*, 351 F. Supp. 2d 152, 155 (S.D.N.Y. 2004).

Plaintiff proffers no allegations establishing that Empire qualifies as any of these types of entities. At most, the complaint alleges that Empire was a health insurer. (Compl. ¶¶ 2, 10.) The Second

---

[9] Defendants also argued, in the alternative, that the complaint's sparse allegations concerning Empire's "authorization" of plaintiff's services do not state a claim even for breach of contract. *Cf. Caniglia v. Chicago Tribune-N.Y. News Syndicate*, 612 N.Y.S.2d 146 (N.Y. App. Div. 1994) (dismissing complaint for "failure to allege, in nonconclusory language, as required, the essential terms of the parties' purported personal services contract, including those specific provisions of the contract upon which liability is predicated . . . whether the alleged agreement was, in fact, written or oral . . . and the rate of compensation"). However, given the Court's ruling that the claim is preempted by ERISA, this argument is moot.

14

Circuit, however, has at least twice "rejected a claim that an insurance company—under contract to provide assistance in the management of an employer's self-funded employee benefits plan—was an unnamed plan administrator." *Crocco*, 137 F.3d at 107 (citing *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993)). Viewing the Plan documents in this case, it is clear that, like the defendants in *Crocco* and *Lee*, Empire is not named as the plan administrator—that role is explicitly assigned to the Chairperson of the Verizon Employee Benefits Committee. (Ex. B to Oluwasanmi Decl. at 16.) Thus, the claim must be dismissed against Empire. *See Crocco*, 137 F.3d at 107 ("[29 U.S.C. §] 1002(16)(A) provides that if a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator for purposes of ERISA." (alteration and emphasis in original) (quoting *McKinsey v. Sentry Insurance*, 986 F.2d 401, 404 (10th Cir. 1993))).

In the alternative, any claim under ERISA must be dismissed because plaintiff has not satisfied ERISA's exhaustion requirement. The complaint does not allege exhaustion, even though establishing exhaustion is generally considered a prerequisite to pursuing an ERISA action. *See, e.g.*, *Novella v. Westchester Cnty.*, 661 F.3d 128, 135 n.10 (2d Cir. 2011) (stating that "[a]lthough 'ERISA does not contain an explicit exhaustion[-]of[-]remedies requirement . . . this Circuit has inferred [one]'" (quoting *Burke v. PricewaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 79 n.3 (2d Cir. 2009))); *Burke*, 572 F.3d at 79 (stating that "an ERISA action may not be brought in federal court until administrative remedies are exhausted"); *De-Silva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 538 (E.D.N.Y. 2011) (dismissing plaintiffs' Section 502(a)(1)(B) claim with prejudice for failure to plead exhaustion of administrative remedies under the plan); *Kesselman v. The Rawlings Co., LLC*, 668 F. Supp. 2d 604, 608 (S.D.N.Y. 2009) ("[Defendants] argue that [plaintiff] has not stated a viable claim for relief against them because she has not sufficiently pled exhaustion of administrative remedies, a prerequisite to bringing an ERISA action. The Court agrees."). Plaintiff's failure to plead any exhaustion of administrative remedies here typically would require dismissal of its claim on this ground. *See, e.g.*, *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133-34 (2d Cir. 2001) (per curiam) (affirming dismissal for failure to exhaust); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 595 (2d Cir. 1993) (same); *Thomas v. Verizon*, No. 02 Civ. 3083(RCC)(THK), 2004 WL 1948753, at *4 (S.D.N.Y. Sept. 2, 2004) (citing cases in which a failure to exhaust administrative remedies under an ERISA plan led to dismissal). Although "[c]ourts will waive the exhaustion requirement if the Plaintiff makes a 'clear and positive showing' that pursuing available administrative remedies would be futile," *Thomas*, 2004 WL 1948753, at *4, plaintiff has made no such showing. In fact, although Empire argued that Star failed to exhaust, Star did not even address the question of exhaustion in its papers.

D. Claims Against the Sarrises

As noted above, the Sarrises have not participated in the motions to remand or dismiss. Nonetheless, the Court *sua sponte* declines to exercise supplemental jurisdiction over the remaining claims against them, *see Coyle v. Coyle*, 354 F. Supp. 2d 207, 214 (E.D.N.Y. 2005), which appear to assert breaches of contract and fiduciary duty under New York law, and raise no federal questions. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am.*

*v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims against the Sarrises given the absence of any federal claims that survive the motion to dismiss. The claims against the Sarrises are therefore remanded to the Supreme Court of the State of New York, County of Suffolk. *See Bayliss v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("Where the state claims originally reached the federal forum by removal from a state court, the district court has the discretion to dismiss the claims without prejudice or remand them to the state court.") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)); *Borden v. Blue Cross & Blue Shield of Western N.Y.*, 418 F. Supp. 2d 266, 274 (W.D.N.Y. 2006) (remanding where state breach of contract and fiduciary duty claims against removing defendant preempted by ERISA, and state claims remained against non-removing defendant).

IV. CONCLUSION

Plaintiff's claim against Empire under New York law is preempted by ERISA, and plaintiff's motion to remand this action is denied.[10] Empire's motion to dismiss is granted because no claim lies against Empire under ERISA and, in the alternative, because plaintiff has not exhausted administrative remedies. Finally, the Court remands the remaining claims against the Sarrises because no federal claims survive the motion to dismiss.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: March 19, 2014
Central Islip, NY

\* \* \*

Plaintiff is represented by John Fazzini and Mona R. Conway, Law Office of John Fazzini, 33 Walt Whitman Road, Suite 310, Huntington Station, NY 11746. Defendant Empire is represented by Alvin C. Lin and Howard S. Wolfson, Morrison Cohen LLP, 909 Third Ave, New York, NY 10022.

---

[10] Plaintiff also moved for an award of fees, under 28 U.S.C. § 1447(c), for improper removal by Empire. As the Court has concluded that the removal was proper, the motion for attorney's fees is denied.